IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 10 C 3881 |
| WILLIE SMITH, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Following a bench trial in May 2008, this Court found Willie Smith guilty of three counts of possession with intent to distribute cocaine and six counts of use of a telephone to facilitate his commission of the possession-with-intent offenses. The Court acquitted Smith of the other charges against him. The Court sentenced Smith to concurrent sentences of eighty-four months imprisonment on the possession-with-intent counts and forty-eight months imprisonment on the telephone counts.

Smith has moved the Court pursuant to 28 U.S.C. § 2255 to vacate his conviction and sentence. He alleges that his trial counsel was ineffective. For the reasons stated below, the Court denies Smith's motion.

### Background

Smith was one of twenty-eight people indicted in September 2005 for narcotics offenses arising out of the drug trafficking operations of the Four Corner Hustlers street gang on the west side of Chicago. Smith was later charged in a superseding indictment with one count of conspiracy to possess cocaine and crack cocaine with intent to

distribute, four counts of use of a telephone to carry out the alleged conspiracy, three counts of possession of cocaine with intent to distribute, and six counts of use of a telephone in facilitating his alleged possession of cocaine with intent to distribute.

Smith waived his right to a jury trial, and a bench trial began before the Court on May 27, 2008. Two of Smith's co-defendants, Anthony Sutton and Marshall Sutton, testified against Smith. The Court found Smith guilty on the three possession-with-intent counts and the six related telephone counts but acquitted him on the remaining counts.

Smith appealed his conviction and sentence. Smith's trial counsel then filed a motion to withdraw, which the Court granted. The court of appeals appointed new attorneys to represent Smith for purposes of his appeal. These attorneys later filed a motion to withdraw based on their inability to identify any non-frivolous grounds for appeal. *See Anders v. California*, 382 U.S. 738 (1967). In an *Anders* brief, Smith's attorneys stated that Smith "may have grounds to raise an ineffective assistance of counsel claim" but stressed that "such a claim would be best raised under 28 U.S.C. § 2255." Anders Br. 32.

On August 21, 2009, the court of appeals granted the motion to withdraw and dismissed Smith's appeal. *United States v. Smith*, 338 Fed. App'x 544 (7th Cir. 2009). The court agreed that Smith's ineffective assistance of counsel argument should be presented during section 2255 proceedings before this Court. *Id.* at 549-50.

In his section 2255 motion, Smith seeks a new trial or resentencing based on ineffective assistance of counsel. His argument has five bases. First, Smith contends that counsel should have presented evidence of Smith's diminished mental capacity at

trial. Second, Smith argues that counsel failed to present expert testimony about the prevalence of fake drugs in the narcotics trafficking business. Third, Smith asserts that counsel failed to object to hearsay testimony offered by the prosecution about Smith's involvement in drug deals. Fourth, Smith contends that counsel should have presented evidence of Smith's mental capacity during the sentencing hearing. Fifth and finally, Smith argues that at the sentencing hearing, counsel failed to challenge the drug quantity calculations and the Court's finding that the drugs were actually cocaine. In a reply brief, Smith revised his request for relief by asking in the alternative for limited discovery and an evidentiary hearing.

## Discussion

In determining whether Smith's counsel was unconstitutionally ineffective, the Court applies the principles of *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, Smith must make a two-part showing. First, he must demonstrate that his attorney's performance "fell below an objective standard of reasonableness." *Id.* at 688. In evaluating the evidence on this issue, the Court makes "every effort . . . to eliminate the distorting effects of hindsight" and thus "indulge[s] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Second, Smith "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In other words, Smith must demonstrate "a probability sufficient to undermine confidence in the outcome." *Id.* In determining prejudice, the Court

considers the totality of the evidence presented by the parties. *Id.* at 695. The Court need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

**1.     Evidence of mental capacity at trial**

First, Smith argues in essence that counsel failed to present a diminished capacity defense at trial based on Smith's low IQ and illiteracy. For this reason, he argues, "the Court's observations [about Smith's mental capacity] are incomplete." Def.'s Reply 4.

A defendant who offers a diminished capacity defense seeks to show "that the defendant's mental condition is such that he or she cannot attain the culpable state of mind required by the definition of the crime." *United States v. Fazzini*, 871 F.2d 635, 641 (7th Cir. 1989). In this case, a diminished capacity defense would involve a contention that Smith was unable to "knowingly or intentionally" possess narcotics with intent to distribute. 21 U.S.C. § 841(a).

Smith was not prejudiced by the lack of additional testimony regarding his mental capacity. The evidence presented at trial overwhelmingly showed that Smith had, and was capable of having, the mental state required by section 841(a). This evidence included several recorded conversations in which Smith actively discussed his illegal activities.

Even if counsel had presented a diminished capacity defense, there is no reasonable probability that the Court would have acquitted Smith of the remaining charges. First of all, though Smith has intellectual limitations, the Court found him

competent to stand trial. In a motion to withdraw filed prior to trial, Smith's first attorney William O. Walters informed the Court that "a copy of a Social Security decision granting disability payments to Willie Smith . . . confirm[s] his IQ of 65." Walters Mot. Withdraw 1. Smith underwent a psychiatric examination for the purpose of determining his competency to stand trial. As the Court noted during Smith's sentencing hearing, the report of the pretrial competency examination "concluded that [Smith] had some limitations but that [he was] competent in the legal sense of the term." Sentencing Tr. 13:9-11.

Second, when the Court discussed Smith's mental capacity at sentencing, it reiterated that Smith's limitations did not undermine his ability to form the requisite mental state. The Court discussed its impressions of Smith's mental capacity in detail:

> *I listened to the tapes at the trial*, and, I mean, I didn't have any doubt regarding your competence there. I mean, you were very competent at the illegal activity that you were doing with the one exception, and that was, as [Smith's trial counsel] points out, you weren't able to cook the cocaine on the one occasion although I don't really attribute that to anything having to do with your lack of ability or intelligence. I think it had more to do with the quality of cocaine. At least that's what you attributed it to, if I recall the tape correctly.

*Id.* at 13:12-21 (emphasis added).

Under these circumstances, additional evidence of mental incapacity would have added virtually nothing to Smith's argument that he lacked the *mens rea* required to support his convictions. *Cf. Mallett v. United States*, 334 F.3d 491, 495 (6th Cir. 2003) (affirming district court's finding, "based on a careful review of [a psychological evaluation] report at the time of the sentencing hearing and the 'ample opportunity the Court had to observe Mallett's behavior at trial,' . . . that 'Mallett could *not* show . . . that

he lacked the mental capacity to form the intent necessary to be convicted of [possession with intent to distribute cocaine]") (emphasis in original); *Pomales v. United States*, Nos. 08-cv-01054, 03-cr-00431-3, 2009 WL 1685138, at *7 (N.D. Ohio June 15, 2009) (concluding, based on psychological reports and "th[e] Court's assessment of Pomales at sentencing, . . . that Pomales has failed to show a reasonable probability that the result [at trial] would have been different"). Smith has not shown a reasonable probability that this evidence would have affected the result of the trial.

2. **Expert witness testimony regarding fake narcotics**

Smith next argues that counsel failed to present "expert witness testimony about the prevalence of fake drugs in narcotics trafficking." Def.'s Reply 4. Smith argues that this, combined with other evidence, would have led the Court to conclude that he "was not being sold cocaine." *Id.*

On this point, Smith has again failed to demonstrate that counsel's omission prejudiced him at trial. Smith's convictions were based, in large part, on multiple recorded telephone conversations between himself and others. These calls established that Smith purchased cocaine intending to cook it into crack and sell it. The presentation of additional, general evidence about the use of fake narcotics in some drug transactions would have done nothing to rebut this case-specific evidence.

By contrast, counsel asked questions while cross-examining witnesses that were intended to raise doubts about Smith's purchase and sale of drugs. For example, while questioning Marshall Sutton, counsel sought to establish that Sutton did not know for sure that the drugs he sold to Smith were genuine. Trial Tr. 141:18-25. Similarly, while

questioning the testimony of a drug expert called by the prosecution, counsel attempted to elicit testimony suggesting that Smith was not selling cocaine because the police would have found scales, small bags, and weapons upon searching his home. *Id.* 175:17-176:13. Though these lines of inquiry were ultimately fruitless, they were far more probative of Smith's involvement in drug trafficking than an expert's opinion on whether drug dealers sometimes sell fake cocaine. *Cf. Valenzuela v. United States*, 261 F.3d 694, 700 (7th Cir. 2001) ("Given this testimony [challenging police identification of drugs], we are unsure what, if any, added value the proposed [expert] witness would have added").

Accordingly, the Court concludes that Smith suffered no prejudice due to his counsel's failure to call an expert on the issue of fake narcotics in drug deals.

**3.     Failure to object to hearsay testimony**

Smith also argues that counsel failed to object to "the hearsay statement of an unknown individual who gave [Smith's] alleged crack their [sic] seal of approval." Def.'s Mem. 6. This argument concerns testimony by Marshall Sutton during redirect examination, when he recounted seeing Smith's customers walk off, sample Smith's crack, and return to "let him know that it was decent." Trial Tr. 144:19-22; *see also id.* at 145:9-11 ("He'd break off a piece and give it to somebody, and they went and tested it for him and came back and told him it was good").

The Court need not address whether this testimony is admissible under a hearsay exception because counsel's failure to object did not cause prejudice to Smith. The statement was of minimal importance to the prosecution's case. Had the Court

sustained a hearsay objection, an abundance of other testimony from Marshall Sutton and Anthony Sutton regarding their experiences selling drugs to Smith would have stood. More importantly, the multiple telephone conversations between Smith and others corroborating that testimony would have been unaffected. Accordingly, the Court finds no reasonable probability that a successful objection from counsel would have changed the result of the trial.

**4.   Evidence of mental capacity at sentencing**

Next, Smith contends that counsel was unconstitutionally ineffective due to his failure at sentencing "to introduce evidence relating to [Smith] being illiterate and mentally retarded." Def.'s Reply 5.

Here, too, Smith has failed to demonstrate prejudice. As discussed above, the Court was familiar with Smith's mental limitations after reviewing his psychiatric evaluation and listening to numerous recorded telephone conversations in which he discussed drug deals. Moreover, at sentencing Smith's mental limitations and illiteracy were, in fact, brought to the Court's attention. As Smith concedes, these conditions were discussed in the presentence investigation report. Def.'s Mem. 4. The Court also stated at sentencing that "[Smith] can't read, and I recall that" and considered counsel's argument that "[Smith] has a low IQ." Sentencing Tr. 3:12; *id.* 11:15.

Although it is true that "the fact that [Smith] is mentally retarded and illiterate is relevant for sentencing purposes," Def.'s Reply 6, the Court was aware of these facts and took them into consideration. The presentation of additional evidence emphasizing them further would not have created a reasonable probability that the sentence would

have been more favorable.

**5.    Failure to challenge quantity and drug findings at sentencing**

Finally, Smith argues that at the sentencing hearing, counsel failed to contest the Court's finding that the substances were cocaine, as well as the quantity of drugs at issue. According to Smith, doing so "would have resulted in a lower sentence for [Smith]." Def.'s Mem. 7.

On both points, Smith has failed to demonstrate that counsel's omissions prejudiced him. Smith's argument with respect to the cocaine finding misses the mark. The Court had already found that the government had proved beyond a reasonable doubt that Smith was guilty of possessing cocaine with intent to distribute. It thus would have been pointless for counsel to object at sentencing "as to whether the Government carried its burden" in demonstrating that the substance at issue was cocaine. Def.'s Reply 7.

The Court likewise rejects Smith's argument with respect to the drug quantity findings. Smith's base offense level of 30 (based on a finding that his offenses involved 50 to 150 grams of crack cocaine) was calculated based on the April 16, 2005 and May 14, 2005 deals, each of which involved a 63-gram powder cocaine transaction that enabled Smith to cook crack cocaine. The only grounds Smith identifies for objecting to the drug quantities are alleged inconsistencies in the trial testimony of Marshall and Anthony Sutton and the just-discussed challenge to the cocaine finding. But as noted above, an objection to the cocaine finding would be baseless, and inconsistencies in testimony do nothing to discredit the damning recorded evidence regarding these two

deals.

Conceivably, counsel could have argued that a finding of 50 to 150 grams of crack cocaine was not supported by either of the two deals.  However, such an objection would not have altered the Court's decision.  At trial, the government presented recorded telephone calls relating to both deals.  During one of these calls, Smith discussed his attempts to cook crack using the powder cocaine he bought from Anthony Sutton on April 16.  During another, he discussed his intention to cook the cocaine he bought from Sutton on May 14.  The government also offered expert testimony that powder cocaine "usually yields about 90 percent" of its original mass when it is cooked into crack.  Trial Tr. 174:16.  Based on this evidence, the Court found that a base offense level of 30, premised upon 50 to 150 grams of crack cocaine, was established by a preponderance of the evidence.  *See* U.S.S.G. § 2D1.1(c)(5).  Given this evidence, which the Court had accepted, one of the two drug deals was enough to get Smith over the 50 gram threshold, and two were more than enough.

A challenge to the drug quantity finding would not have presented a reasonable probability of affecting Smith's sentence.  *Cf. Berkey v. United States*, 318 F.3d 768, 774 (7th Cir. 2003) (finding no prejudice because "[t]he government had significant evidence concerning drug quantities attributable to Berkey that placed him in a damaging light").  Accordingly, Smith has not demonstrated prejudice on this ground.

**6.     Evidentiary Hearing**

As noted above, Smith seeks an evidentiary hearing as alternative relief.  Courts "should grant an evidentiary hearing on a § 2255 motion when the petitioner alleges

facts that, if proven, would entitle him to relief." *Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010) (internal quotation mark omitted). However, "the district court need not hold an evidentiary hearing where the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *Id.* at 699-700 (internal quotation marks omitted); 28 U.S.C. § 2255(b).

The Court is "familiar with [Smith's] case, having handled it from the start." *Ebbole v. United States*, 8 F.3d 530, 534 (7th Cir. 1993). The Court found Smith competent to stand trial, heard a bench trial, and sentenced him. Given its extensive involvement in the proceedings, "the court had sufficient information—based on its observations, the record, and the law—to determine" that Smith did not receive unconstitutionally ineffective assistance of counsel. *Id.* Specifically, as discussed above, the record conclusively demonstrates that Smith was not prejudiced by any of the errors alleged in his section 2255 motion. Therefore, his mostly conclusory allegations that other types of evidence would have changed the outcome at trial or sentencing do not demonstrate a need for an evidentiary hearing.

## Conclusion

For the reasons stated above, the Court directs the Clerk to enter judgment denying Smith's section 2255 motion.

                                                                                          _____
                                                                                          MATTHEW F. KENNELLY
                                                                                          United States District Judge

Date: December 16, 2010